IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA )    CIV. NO. 06-00140 BMK
and DEPARTMENT OF HEALTH, )
STATE OF HAWAII, )
 )
Plaintiffs, )    ORDER GRANTING IN PART
 )    AND DENYING IN PART
 )    DEFENDANTS' MOTION FOR
v. )    JUDICIAL RESOLUTION
 )
JAMES H. PFLUEGER; )
PFLUEGER PROPERTIES; and )
PILAA 400 LLC, )
 )
Defendants. )
_____ )

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDICIAL RESOLUTION

Before the Court is Defendants' Motion for Judicial Resolution,

seeking a determination that under the provisions of the Consent Decree,

Defendants are excused from the United States of America's demand for payment

of stipulated penalties totaling $157,750.  This matter was heard on June 15, 2007.

After careful consideration of the motion, the memoranda supporting and opposing

the motion, and arguments of counsel, Plaintiffs' motion is hereby GRANTED IN

PART and DENIED IN PART.  The Court orders Defendants to pay $22,750 in

stipulated penalties for their failure to meet certain milestones related to the

Supplemental Environmental Project ("SEP").  However, the Court finds that

Defendants' failure to meet the current Pilaà "Package 2" remediation milestones is excused by impracticability.

BACKGROUND

In 2002, Plaintiffs Limu Coalition, Kilauea Neighborhood Association, the Environmental Protection Agency ("EPA"), the State of Hawaii ("the State"), and the County of Kauai ("the County") (collectively, "Plaintiffs") all filed civil claims against Defendants James Pflueger, Pflueger Properties, and Pilaà 400 (collectively, "Defendants") for alleged violations of federal and state Clean Water Act requirements arising from unpermitted grading work.  After several years of mediation, the parties entered into a consent decree ("the Consent Decree"), which was filed on June 19, 2006.  The Consent Decree required Defendants to pay a civil penalty, to implement remediation efforts at the Pilaà and Ka Loko properties, and to undertake a Supplemental Environmental Project ("SEP") to replace individual residential cesspools in the Kalihiwai Bay community.

Defendants began some of the required remediation work before the Consent Decree was finalized.  The "Package 1" remediation was completed by the end of 2005, and in January of 2006, Defendants applied for a grading permit for the "Package 2" remediation work.  In February of 2006, the County informed

2

Defendants that a permit fee of $26,085 and a grading bond of $5,217,000 would

be required to obtain the permit.  Defendants paid the fee on April 7, 2006.

Meanwhile, on March 9, 2006, the Consent Decree was lodged with

the Court.  On March 14, however, before the decree was filed, the Ka Loko

reservoir, owned in part by Defendant James Pflueger, breached its dam, resulting

in property damage and loss of life.  As a result of Defendants' potential liability

for this event, Defendants were unable to acquire the bond they needed to obtain

the grading permit for the Package 2 remediation work under the Consent Decree.

Defendants proposed a number of alternatives to the County, such as dividing the

Package 2 remediation work into five separate phases, each requiring a $1 million

bond.  The County finally rejected this possibility on October 19, 2006.  On

October 20, 2006, Defendants sent a letter to Plaintiffs invoking the "force

majeure" provision of the Consent Decree.  At the same time, Defendants decided

to cease work on the SEP cesspool replacement project, and elected to pay the

stipulated penalty for that project instead.

Plaintiffs rejected Defendants' invocation of the force majeure

provision and demanded stipulated penalties for Defendants' failure to meet certain

Consent Decree milestones with respect to both the Package 2 remediation and the

SEP.  Defendants contend that they do not owe these stipulated penalties, and have

requested judicial resolution of this matter.

DISCUSSION

I.  GRADING PERMIT

Defendants first seek relief from Plaintiffs' demand for $135,000 in

stipulated penalties for Defendants' failure to meet certain Consent Decree

milestones for remediation work at Pilaʻa.  Appendix H of the Consent Decree

requires Defendants to complete construction at Ponds 1-4 at Gulch 3 by October

6, 2006 and construction at Gulch 2 by October 31, 2006.  Because of their

inability to obtain a grading permit–due to their inability to obtain a

bond–Defendants did not complete this work by the specified dates.  As a result,

Plaintiffs now demand $135,000 in stipulated penalties.[1]  Defendants do not

contest their failure to meet these milestones, but argue that they are not liable for

stipulated penalties because (1) they have properly invoked the "force majeure"

provision of the Consent Decree, and (2) even if they have not properly invoked

---

[1]This demand covers only the stipulated penalties up through November 28th.  Under the Consent Decree, Defendants would continue to owe stipulated penalties until they complete the remediation work.  It is the Court's understanding, however, that the parties have agreed to a stipulation to amend the consent decree and that this amendment will include new remediation milestones.

the "force majeure" provision, their performance was rendered impracticable by intervening circumstances.

A. Force Majeure

Under the Consent Decree, a force majeure event is "any event beyond the control of Defendants . . . that delays the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation, and may include the failure to obtain, or delay in obtaining, a permit . . . ." (Consent Decree (hereinafter "CD") ¶ 55.) However, the definition of force majeure "does not include Defendants' financial inability to perform any obligation under this Consent Decree." (CD ¶ 55.) Moreover, Defendants are only able to take advantage of the force majeure provision where they "provide oral and written notice as required by this Paragraph . . . ."[2] (CD ¶ 56.) Specifically, Paragraph 56 requires that Defendants "shall provide notice orally or by electronic or facsimile transmission . . . not later than 72 hours after the time Defendants first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event" and that  Defendants "shall also provide written notice . . . within seven

---

[2]"Failure to provide oral and written notice as required by this Paragraph shall preclude Defendants from asserting any claim of force majeure." (CD ¶ 56.)

5

days of the time Defendants first knew of, or by the exercise of due diligence,

should have known of, the event."  (CD ¶ 56.)

Here, Defendants failed to timely assert their force majeure claim.

Defendants did send Plaintiffs written notice of their force majeure claim on

October 20, the day after the County's final rejection of Defendants' alternative

bond proposal.  Defendants concede, however, that they did not send the electronic

notice to Plaintiffs within the required 72 hour period. (Defs.' Reply Mem. 10.)

Thus, even accepting as true Defendants' contention that a force majeure event

occurred on October 19, 2006, Defendants are precluded from asserting this claim

because of their failure to send timely electronic or oral notification.

Defendants argue that Paragraph 56 should be construed as precluding

the assertion of a force majeure claim only where Defendants fail to provide *either*

written notice *or* electronic or oral notice.  If this had been the intention of the

parties, however, the Consent Decree could have been so drafted.  To the contrary,

Paragraph 56 mandates that Defendants provide Plaintiffs with electronic or oral

notice "and also" with written notice.  (CD ¶ 56.)  Although it is virtually

inconceivable that Defendants' 24-hour delay in providing electronic notice caused

Plaintiffs any harm, the terms of the consent decree prevent Defendants from

invoking the force majeure provision.  According to the terms of the Consent

Decree, Defendants do owe stipulated penalties for their failure to meet the Package 2 remediation milestones.

B. Impracticability

Apart from any relief that Defendants might obtain under the terms of the Consent Decree itself, however, Defendants also claim that their performance of some of the Consent Decree requirements should be excused for impracticability.  Consent decrees are interpreted as contracts.  Cook v. City of Chicago, 192 F.3d 693, 695 (7th Cir. 1999).  Contract performance can be excused under the doctrine of impracticability.  Massachusetts Bay Transp. Auth. v. United States, 254 F.3d 1367, 1372 (Fed. Cir. 2001).  The Restatement (Second) of Contracts defines the doctrine of impracticability as follows:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (1981).[3]   This is precisely the situation

---

[3]At the hearing, Plaintiffs suggested that the equitable defense of impracticability was not available to Defendants because the Consent Decree's "force majeure" provision subsumed any equitable defenses Defendants might invoke.  Plaintiffs pointed to Cook v. City of Chicago in support of this proposition.  However, Cook holds only that the parties to a consent decree may cabin a court's discretion to award equitable remedies for violations of the consent decree, not that the parties may cabin a court's discretion about whether to excuse performance of the contract on equitable grounds.  Here, there is little doubt that the specified stipulated penalties describe the available remedies for violations of the Consent Decree.  The existence of these

here, where it became impracticable for Defendants to meet the current Pilàa restoration milestones because of their unforeseen inability to obtain the necessary surety bond.  Defendants are therefore excused from meeting the existing restoration milestones, and do not owe the $135,000 Plaintiffs seek in stipulated penalties.

First, Defendants' inability to obtain a surety bond constituted the "occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made," Restatement (Second) of Contracts § 261.  It was a basic assumption of the Consent Decree that Defendants would be able to obtain a surety bond.  Obtaining a surety bond was not, as Plaintiffs argue, a bargained-for term of the contract, but rather was a condition precedent necessary to the remediation work that was the primary purpose of the agreement.  (See CD, Appendix I (listing "Bond/Grading Permit for Pkg 2" as a "task" upon which the performance of the following seven projects is predicated, not as a separate project with its own performance milestones).)

Plaintiffs also argue that Defendants either knew or should have known, at least by the date the Consent Decree was filed, that they would be unable

---

stipulated penalties does not, however, preclude the Court from excusing Defendants' performance of the underlying milestones on equitable grounds.

to obtain a surety bond.  While it is certainly true that both Defendants and

Plaintiffs knew as of June 19, 2006, that Defendants would be unable to meet some

of the Consent Decree's milestones, because some milestones had already passed,

it is not the case that Defendants knew or should have known they would not be

able to obtain a surety bond and grading permit.  It was not until contacting

bonding companies *after* June 19, 2006, that Defendants became aware that they

would not be able to get a bond.  (Mem. Supp. Mot. 8.)  Moreover, to the extent

that the parties bargained for the more general risk of failing to obtain a grading

permit, this was a risk that was borne by Plaintiffs, not Defendants.  (See CD ¶ 55

(recognizing "the failure to obtain, or delay in obtaining, a permit" as an allowable

"force majeure" event, beyond the control of Defendants).)

Second, as a result of Defendants' inability to obtain a surety bond,

their performance of the Package 2 milestones was "made impracticable without

[their] fault."  Plaintiffs suggest that Defendants' performance was not actually

impracticable because Defendants could have obtained the grading permit by

liquidating assets and putting up the $5,217,000 in cash, rather than in the form of

a surety bond.  This solution, however, would have been far outside of the rights

and responsibilities for which the parties bargained; the doctrine of impracticability

exists in order to prevent parties from having to perform in such unbargained-for ways.[4]

Plaintiffs also suggest that the failure to obtain a grading permit was the fault of Defendants.  This argument is based on the notion that Defendants should have begun to seek a surety bond before the Ka Loko dam breach, several months before the Consent Decree was filed.  This assumption that Plaintiffs had a contractual duty prior to the date of filing, however, is at odds with Plaintiffs' arguments on foreseeability, where they implicitly argue that the operative date of the contract for determining the parties' "basic assumption[s]," Restatement (Second) of Contracts § 261, is the date of filing, not some earlier date of agreement.  The Court determines that Defendants had no legally binding obligations under the Consent Decree before the Decree was filed.  Moreover, Defendants appear to have made all reasonable efforts to obtain a bond and a grading permit.  They suggested several alternative proposals, such as dividing the work into separate sub-parts or using the land as collateral.  The County rejected these alternative proposals.

---

[4]Here, as in other contexts, "[i]mpracticability does not mean impossibility," Daly v. Harris, 209 F.R.D. 180, 186 (D. Haw. 2002) (defining impracticability in the context of joinder for class action purposes).

10

The Court therefore determines that Defendants' compliance with the Package 2 remediation milestones has become impracticable, and hereby rules that Defendants are excused from paying the $135,000 in stipulated penalties that Plaintiffs seek for violation of these milestones.

## II.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

Plaintiffs also claim that Defendants owe $22,750 in stipulated penalties for failure to comply with two separate provisions regarding the SEP. First, Plaintiffs claim that Defendants owe $7,500 in penalties for failing to timely submit the SEP project manager's name to Plaintiffs in violation of Paragraph 23. Second, Plaintiffs claim that Defendants owe $15,250 in penalties for failing to timely complete a cesspool inventory.

### A.  <u>Name of Project Manager</u>

First, Plaintiffs claim that Defendants owe $7,500 in penalties for failing to timely submit the SEP project manager's name to Plaintiffs in violation of Paragraph 23 of the Consent Decree.  Paragraph 23 requires that "[w]ithin 30 days from the date this Consent Decree is entered, Defendants shall submit to [Plaintiffs] the name of an individual or firm to serve as the Project Manager responsible for overseeing work performed pursuant to this Section."  (CD ¶ 23.)

Under Paragraph 23, Defendants should have submitted their project manager's name by July 19, 2006, but did not do so until August 11, 2006.

Defendants do not dispute that they did not timely submit their project manager's name to Plaintiffs.  They argue, however, that they do not owe any stipulated penalties for this delay.  Paragraph 42(c) provides for stipulated penalties "[i]f, in performing the SEP, Defendants fail to comply with all applicable work plans and requirements of Appendix G to this Decree." (CD ¶ 42.) Defendants argue that submitting the name of their project manager is not a requirement of Appendix G, which requires only that "[w]ithin 30 days after the Effective Date of the Consent Decree, and in accordance with Section VI of the Consent Decree, Defendants shall designate a Project Manager to manage this project."  (CD, App. G., ¶ 1.)

Defendants argue that they did in fact timely "designate" Belt Collins as project manager for the SEP in compliance with Appendix G, even if they did not "submit" their designee to Plaintiffs as required by Paragraph 23.  Because the stipulated penalties are keyed to the requirements of Appendix G, Defendants contend that they do not owe any stipulated penalties for their failure to timely submit their designee's name to Plaintiffs.

The language of Appendix G on which Defendants rely, however, is preceded by the phrase "and in accordance with Section VI of the Consent decree." (CD, App. G, ¶ 1.)  Section VI is the SEP section of the decree, and contains the requirement that the project manager's name be submitted to Plaintiffs.  Read in this context, "designate" must be understood to mean 'designate to Plaintiffs.' Defendants failed to so designate their project manager to Plaintiffs, and so they do owe $7,500 in stipulated penalties under Paragraph 42(c).

B.  Failure to Complete Cesspool Inventory

Plaintiffs also claim that Defendants owe $15,250 in stipulated penalties for failing to timely submit an inventory of residential cesspools as required by Paragraph 3 of Appendix G.[5]  This amount represents 35 days of stipulated penalties, from the day after the inventory was due on September 18, 2006 to October 24, 2006, when Defendants paid the required penalties under Paragraph 42(b) for failing to perform the SEP.

Defendants do not disagree that the cesspool inventory was due on September 18, 2006, but argue that Plaintiffs only have the right to seek stipulated penalties for 6 days of non-compliance rather than for 35 days.  Defendants argue

---

[5]"Within 90 days after the Effective Date of the Consent Decree, the Project Manager shall complete an inventory of residential cesspools located within 1,000 feet of the Kalihiwai Stream and/or ocean at Kalihiwai Bay and submit this list to EPA and DOH for approval."  (CD, App. G, ¶ 3.)

that because Paragraph 42(b) allows them 30 days to pay the stipulated penalty for failure to perform after they cease work on the SEP, then they should not have to pay any stipulated penalties for the 30 day period following September 18, which is the date they claim to have ceased work on the SEP.

Plaintiffs point out, however, that Paragraph 43 explicitly provides that "Stipulated Penalties payable under Paragraph 42.c, above, shall cease to accrue upon payment of a Stipulated Penalty under Paragraph 42.b, above." (CD ¶ 43.)  This language obviously contemplates the stipulated penalties of Paragraph 42(c) running until the date of *payment* of the Pargaraph 42(b) penalty, not until 30 days prior to the date of payment of the Paragraph 42(b) penalty, as Defendants would have it.  Accordingly, Defendants are liable for $15,250 in stipulated penalties for failure to timely submit the cesspool inventories.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judicial Resolution is hereby GRANTED IN PART and DENIED IN PART.  On the ground of impracticability, Defendants are excused from paying the stipulated penalties Plaintiffs seek related to the Package 2 remediation.  However, Defendants do owe $22,750 in additional stipulated penalties for their failures to meet SEP milestones.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: June 27, 2007

United States v. Pflueger; Civ. No. 06-00140 BMK; ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR JUDICIAL RESOLUTION.